IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKAEL TJUATJA,<br><br>    Plaintiff,<br><br>  v.<br><br>CHI MANAGEMENT GROUP, L.P. SHORT AND LONG TERM DISABILITY PLAN,<br><br>    Defendant.<br>_____/ | No. C-08-0896 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT** |

On January 28, 2009, plaintiff Mikael Tjuatja ("Tjuatja") filed a motion for summary judgment, and, on February 20, 2009, Defendants CHI Management Group, L.P. Short Term Disability Plan ("STD Plan") and CHI Management Group, L.P. Long Term Disability Plan ("LTD Plan") filed a cross-motion for summary judgment. By order filed May 8, 2009, the Court denied the parties' respective motions for summary judgment. By order filed June 1, 2009, the Court, at the parties' joint request, construed the parties' respective motions for summary judgment as motions for judgment, pursuant to Rule 52 of the Federal Rules of Civil Procedure, and afforded the parties leave to file supplemental briefs, which the parties subsequently filed. Having read and considered the papers filed in support of and in opposition to the parties' respective motions for judgment, as well as the administrative record, the Court rules as follows.

**BACKGROUND**

Tjuatja was diagnosed with "interstitial cystitis" in 2001, and hospitalized for the condition in 2002. (See Claim Folder ("CF") 62, 107.)[1] Several years later, on July 31, 2006, Tjuatja was hired by CHI Management Group, L.P. ("CHI") as a Schematic Analyst/Systems Analyst, which position required him to "[a]ssist in the construction of software applications by identifying requirements, creating database diagrams, constructing databases, maintaining data integrity and creating test plans." (See Krangle Decl. ¶ 3; CF 97.)[2] During the course of his employment with CHI, Tjuatja became a participant in the STD Plan and the LTD Plan. (See CF 122; Krangle Decl. Ex B at 5.)

On February 21, 2007, Tjuatja notified Unum Life Insurance Company of America ("Unum"), the claims administrator of both the STD and LTD Plans, of his "intent to file a Short Term Disability claim." (See CF 16, 130; Krangle Decl. Ex. at ¶¶ 5-6, Ex. A at 10, Ex. B at 27.) His last day of work was February 27, 2007. (See CF 50.) According to Unum, Tjuatja "filed a claim . . . with a date of disability of March 1, 2007." (See CF 257.)[3]

In support of his claim, Tjuatja submitted a letter and a form completed by his treating physician, Domenico Manzone, M.D. ("Dr. Manzone").[4] (See CF 62-63, 107-110.) In said documents, Dr. Manzone opined that Tjuatja could not continue to work for CHI in light of his interstitial cystitis. (See CF 62, 107.) On March 28, 2007, Unum denied

---

[1] The Claim Folder, which is the administrative record, is attached to the Affidavit of Amy W. Waters, filed February 20, 2009.

[2] In a declaration filed in support of defendants' motion, CHI's Director of Compensation and Benefits states that Tjuatja's job title was "Schematic Analyst." (See Krangle Decl. ¶ 3.) During the administrative proceedings, when CHI provided Unum with Tjuatja's job description, it submitted a job description for the position of "Systems Analyst." (See CF 96-98.) Consequently, it appears CHI has used the titles "Schematic Analyst" and "Systems Analyst" interchangeably.

[3] The administrative record does not include a written claim. Rather, it appears that Unum treated Tjuatja's "notice" of his "intent to file a Short Term Disability claim," along with various telephonic communications between Tjuatja and Unum, documented in the administrative record (see, e.g., CF 15, 23-24, 56-57), as Tjuatja's claim.

[4] Dr. Manzone is a urologist who first treated Tjuatja for interstitial cystitis in 2002. (See CF 62-63.)

Tjuatja's claim for benefits under the STD Plan, but stated that if Tjuatja had "additional information to support [his] request for disability benefits," he could submit it within 180 days. (See CF 137-40.) Thereafter, Tjuatja, through Dr. Manzone's office, sent Unum additional information. (See CF 152-53.) On April 13, 2007, UNUM again rejected Tjuatja's claim. (See CF 160.) On October 25, 2007, Tjuatja filed an administrative appeal (see CF 205), which appeal Unum denied on January 10, 2008 (see CF 258).

Tjuatja has not submitted a claim for benefits under the LTD Plan to Unum. (See Krangle Decl. ¶ 10.)

**LEGAL STANDARD**

Where, as here, a court's review of a plan's decision to deny benefits is de novo,[5] disputes of fact are "resolved by trial." See Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir.), cert. denied, 528 U.S. 964 (1999). "Although Rule 43(a) requires that 'testimony' be taken in open court, the record [in an ERISA case] should be regarded as being in the nature of exhibits, in the nature of documents, which are routinely a basis for findings of fact even though no one reads them out loud." Id. "In a trial on the record, . . . the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." Id. at 1095. The trial court "consider[s] anew both the legal and factual aspects of [the plaintiff's] claim." Thomas v. Oregon Fruit Products Co., 228 F.3d 991, 995 (9th Cir. 2000).

**DISCUSSION**

In their respective motions for judgment, the parties seek judgment on Tjuatja's claims that he is entitled to disability payments under both the STD Plan and the LTD Plan. The Court considers in turn Tjuatja's claim for benefits under each plan.[6]

//

---

[5] By order filed May 8, 2009, the Court found the standard of review applicable to the denial of Tjuatja's claim for short-term benefits to be de novo review. (See Order, filed May 8, 2009, at 2:5-6, 2:23-28.)

[6] The following sections, as well as the Background section above, constitute the Court's findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a)(1).

3

**A. Short-Term Benefits**

Tjuatja argues he is entitled to receive benefits under the STD Plan because his condition of interstitial cystitis has rendered him "disabled" under the STD Plan.

Interstitial cystitis is a "chronic inflammatory condition of the bladder in which the bladder develops multiple 'pinpoint' hemorrhages." See Daugherty-Rosenbaum v. Life Ins. Co. of North America, 2007 WL 273571, *1 (D. Ore. 2007). "This condition, for which there is no cure, causes severe pain and burning in the pelvic area, and a frequent and urgent need to urinate." Stith v. Prudential Ins. Co., 356 F. Supp. 2d 431, 432-33 (D. N.J. 2005).

The STD Plan defines the terms "disability" and "disabled" as follows:

> 'Disability' and 'disabled' means that because of illness or injury you cannot perform each of the material duties of your occupation.
>
> Furthermore, you are not considered disabled or under a disability unless you are under the regular care and treatment of a licensed physician, who is practicing within the scope of his/her license during the entire period of disability.

(See CF 123.)

The administrative record contains evidence that Tjuatja, in 2002, underwent a cystoscopy and that a biopsy performed thereafter confirmed Tjuatja had interstitial cystitis. (See CF 62, 83; Mellen Decl., filed January 29, 2009, Ex. B.)[7] The administrative record also contains evidence that, as a result of such condition, Tjuatja was experiencing symptoms on February 19, 2007 (see CF 62), and continuing through at least May 1, 2007 (see Mellen Decl. Ex. B), and that he was under the regular care and treatment of Dr. Manzone or one of Dr. Manzone's colleagues through at least May 1, 2007 (see id.; CF 107). Defendants point to no evidence in the administrative record to support a finding that Tjuatja did not have interstitial cystitis as of March 1, 2007, the date on which Tjuatja contended his period of disability began, that Tjuatja did not experience symptoms as a

---

[7]Exhibit B, a letter written by David H.C. King, M.D. ("Dr. King"), one of Dr. Manzone's colleagues, is not included in the administrative record provided by defendants. Because defendants acknowledge receiving such letter during the administrative proceedings (see Defs.' Opp., filed February 20, 2009, at 6:14-15), it appears the letter was inadvertently not included in the administrative record.

result of said condition, and/or that Tjuatja was not under the regular care and treatment of Dr. Manzone during the relevant time period.

Accordingly, the Court finds Tjuatja had a documented condition, specifically, interstitial cystitis, and that he was under the regular care and treatment of a licensed physician for such condition from, at a minimum, February 19, 2007 through May 1, 2007.

The Court next considers whether, as of March 1, 2007 and during any later period of time for which Tjuatja sought short-term benefits, he was unable to perform the material duties of his occupation as a Systems Analyst.

Tjuatja's treating physician, Dr. Manzone, in a letter dated February 20, 2007, described the symptoms Tjuatja experienced, beginning February 19, 2007, as "constant pain" and "very frequent day and night time [sic] voiding," and further opined that Tjuatja "suffer[ed] from sleep deprivation due to urinary frequency." (See CF 107; see also CF 62 (describing Tjuatja's symptoms as "frequency/urgency/pain").) On a form provided to Dr. Manzone by Unum, and completed by Dr. Manzone on March 5, 2007, Dr. Manzone stated that, as a result of Tjuatja's symptoms, Tjuatja could rarely sit, stand, walk, or lift up to ten pounds. (See CF 63.) Further, on said form, Dr. Manzone stated that he had advised Tjuatja not to return to work, and that he did not expect any improvement in Tjuatja's capabilities for three months. (See id.) Dr. Manzone also informed Unum that he had prescribed Elmiron, the only drug specifically approved for use to treat interstitial cystitis, Lunesta, which is used to treat insomnia, Amitriptyline and Elavil, both of which are antidepressants, and Ditropan XL, Enablex, and Sanctura, each of which is a bladder relaxer. (See CF 62, 109-110, 152-53; Mellen Decl. Ex. B.) Thereafter, on May 1, 2007, a date within three months of March 5, 2007, Dr. King, on behalf of Dr. Manzone, opined that Tjuatja "continue[d] to suffer from severe nocturia and urinary urgency incontinence" and was "unable to get any restful sleep." (See Mellen Decl. Ex. B.)[8]

---

[8]Because Dr. Manzone was on leave when Tjuatja requested he prepare an update for Unum, Dr. Manzone's colleague Dr. King prepared the update, which update was "based on [Dr. King's] review of . . . Tjuatja's office chart." (See id.)

5

1    Defendants point to no evidence in the administrative record that would support a
finding that Tjuatja did not receive the treatments described by Drs. Manzone and King
and/or that Tjuatja did not experience constant pain, frequent voiding, sleeplessness, and
limitations on his abilities to sit, stand, walk, and lift.  Nor does the administrative record
include evidence from which the Court can infer that Tjuatja, Dr. Manzone, and/or Dr. King
are not credible, and the Court finds no other basis upon which to question their credibility.
Further, defendants offer no evidence to support a finding that a person who has interstitial
cystitis and has experienced a relatively symptom-free period is not subject to relapses;
rather, as reported to Unum by a nurse with whom Unum consulted, "[t]he symptoms can
. . . disappear completely for several months at a time."  (See CF 230.)  Finally, both Dr.
Manzone and Unum's consulting nurse agreed that when a patient with interstitial cystitis is
prescribed Elmiron, the patient must take the prescription for several months before its
efficacy is known.  Indeed, although, as noted, Dr. Manzone opined that he would not
expect any improvement for three months (see CF 63), Unum's consulting nurse believed
an even longer period, "at least 6 months," might be necessary (see CF 229).

   Defendants argue that Tjuatja's claim nonetheless was properly denied by Unum
because, according to defendants, Tjuatja did not offer "medical evidence" to support his
claim that he could not perform the material duties of his occupation as a Systems Analyst.
(See Def.'s Opp., filed February 20, 2009, at 8.)  The Court disagrees.  As set forth above,
Tjuatja did offer "medical evidence," specifically, the opinion of his treating physician Dr.
Manzone, as set forth both in a letter and on a form provided to Dr. Manzone by Unum, and
the opinion of Dr. Manzone's colleague Dr. King.  Further, medical evidence was offered to
show that Tjuatja was actively being treated for the condition; in particular, Dr. Manzone
prescribed at least five medications used to treat the particular symptoms commonly
associated with interstitial cystitis.[9]

---

[9]To the extent defendants may be contending the medical evidence offered was not based on sufficiently objective findings, such argument is unpersuasive.  The STD Plan includes no provision requiring the submission of any particular type of medical evidence.  Although the STD Plan does provide that if a claimant's "physician cannot substantiate [the

6

Further, it is readily apparent from the job description CHI provided to Unum that the occupation of Systems Analyst necessarily requires mental acuity, concentration, and attention to detail. In light of Tjuatja's inability to obtain restful sleep over a protracted period of time, coupled with the high levels of pain he experienced as a result of the inflammation of the wall of his bladder, the Court finds Tjuatja has established his inability to perform the material duties of his occupation as of March 1, 2007, and for at least some period of time thereafter.

Consequently, the Court finds Unum's denial of Tjuatja's claim for short-term benefits was erroneous, and, accordingly, will grant Tjuatja's motion for judgment and deny defendants' motion for judgment, as such motions pertain to Tjuatja's claim for benefits under the STD Plan.

Lastly, the Court turns to the proper remedy. A claimant who is "disabled" for purposes of the STD Plan is entitled to recover benefits "following the expiration of 5 calendar days of disability" and that the benefits "shall continue up a maximum of 85 days." (See CF 122.) As noted, Tjuatja's claim is that he was "disabled" as of March 1, 2007, and, consequently, he is entitled to receive benefits beginning March 6, 2007. On the limited record before the Court, however, the Court cannot determine whether Tjuatja is entitled to recover benefits for the maximum of 85 days following March 6, 2007, i.e., up to and including May 29, 2007. In particular, the administrative record contains no evidence addressing the nature of any symptoms Tjuatja may have experienced after May 1, 2007.[10] Under such circumstances, the Court will remand the matter to Unum to determine the period of time in which Tjuatja is entitled to short-term benefits beyond May 1, 2007.

//

---

claimed] disability by objective findings, [the claimant] may be required to see a doctor selected by the claims administrator for an independent evaluation" (see CF 129), Unum did not elect to require Tjuatja to undergo an independent medical evaluation.

[10]Although the record does include Dr. Manzone's projection, made on March 5, 2007, that Tjuatja's condition would not improve for three months, the record includes no evidence to support a finding that such projection ultimately was or was not accurate.

**B. Long-Term Benefits**

Under the LTD Plan, a participant is "disabled" when he is "limited from performing the material and substantial duties of [his] regular occupation due to sickness or injury" and he has "a 20% or more loss in [his] indexed monthly earnings due to the same sickness or injury." (See Krangle Decl. Ex. B at 12.)  If a participant establishes he is disabled under the above-stated definition, he is entitled to benefits under the LTD Plan for a maximum of twenty-four months; the first such payment is made upon the completion of an "elimination period," which period is ninety days from the date the period of disability begins or the last date on which any STD benefits are received, whichever is later.  (See id.) Thereafter, a participant will continue to receive benefits under the LTD Plan only if the participant, "due to the same sickness or injury," is "unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training or experience."  (See id.)

As noted, Tjuatja has not submitted to Unum a claim for benefits under the LTD Plan.  In light thereof, defendants argue they are entitled to judgment on Tjuatja's claim for long-term benefits for the reason he has not exhausted his administrative remedies.  See Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F.3d 1478, 1480, 1484-86 (9th Cir. 1995) (holding district court properly dismissed participant's claim for benefits under plan, where participant failed to exhaust administrative remedies and did not demonstrate administrative remedies were inadequate or futile).

Tjuatja contends it would have been futile for him to present a claim to Unum because, during the administrative proceedings on his claim for short-term benefits, he was advised by a Unum employee that "the short term claim would have to be satisfied before [he] could file a claim for long term benefits." (See Tjuatja Decl., filed March 6, 2009, ¶ 6; see also CF 164.)[11]  In other words, Tjuatja contends that because he assumed his claim

---

[11] In the administrative record, the employee who spoke to Tjuatja memorialized the statement as follows:  "EE asked about LTD and advised STD would have to be satisfied before claim could move to LTD."  (See CF 164.)  Given the brevity of the entry, the Court is unable to determine whether such communication could reasonably be understood to mean that Tjuatja could not file for LTD benefits unless he was granted STD benefits.  In any event, as set forth above, the LTD Plan does not appear to include a provision

8

for long-term benefits likely would be denied, his failure to submit such claim should be excused. Even assuming Tjuatja had sufficient cause not to submit a claim for long-term benefits to Unum, which finding the Court does not make, Tjuatja would not be entitled to judgment because Tjuatja has not offered any evidence to show he was disabled on any date after the expiration of the "elimination period" set forth in the LTD Plan. In particular, for the reasons discussed above with respect to Tjuatja's claim for short-term benefits, the Court cannot determine whether Tjuatja was disabled on any date beyond May 1, 2007, which date is within the elimination period.

Accordingly, the Court will deny Tjuatja's motion for judgment, to the extent it pertains to his claim for benefits under the LTD Plan.

The Court next considers whether such denial should be without prejudice to Tjuatja's filing a claim for LTD benefits, i.e., without prejudice to Tjuatja's exhausting his administrative remedies.

In that respect, defendants contend Tjuatja's claim for long-term benefits is barred by the LTD Plan's pre-existing condition provision. The LTD Plan provides that disabilities caused by a "pre-existing condition" are not "covered." (See Krangle Decl. Ex. B at 20.) The LTD Plan defines a "pre-existing condition" as follows:

> You have a pre-existing condition if:
>
> – you received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the 3 months just prior to your effective date of coverage; and
>
> – the disability begins in the first 12 months after your effective date of coverage.

(See id.)

Tjuatja's "effective date of coverage" under the LTD Plan was February 1, 2007. (See id. ¶ 7.) Because Tjuatja's disability began on March 1, 2007, i.e., within the "first 12

---

requiring a participant to first obtain benefits under the STD Plan. Rather, where a participant does obtain benefits under the STD Plan, the participant cannot begin to receive benefits under the LTD Plan until no further benefits are available under the STD Plan. (See id.)

9

months after" February 1, 2007, his claim for long-term benefits would be barred by the pre-existing condition provision only if he "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines" for interstitial cystitis during November 2006, December 2006, or January 2007. (See id. Ex. B at 20.) The administrative record compiled during the processing of Tjuatja's claim for short-term benefits, however, does not include evidence establishing that Tjuatja had received care or took any prescribed drug for interstitial cystitis during the period of November 2006 through January 2007. Rather, the administrative record is silent on that issue.

Accordingly, defendants are entitled to judgment on Tjuatja's claim for long-term benefits, but without prejudice to Tjuatja's submitting a claim for such benefits.[12]

**CONCLUSION**

For the reasons stated above:

1. Tjuatja's motion for judgment is hereby GRANTED in part and DENIED in part, as follows:

   a. To the extent the motion seeks judgment on Tjuatja's claim for benefits under the STD Plan, the motion is GRANTED, and the matter is remanded to Unum (1) to determine the amount of benefits to which plaintiff is entitled for the period beginning March 6, 2007 through and including May 1, 2007, and (2) to consider whether Tjuatja is entitled to benefits for any additional period of time; and

   b. To the extent the motion seeks judgment on Tjuatja's claim for benefits under the LTD Plan, the motion is DENIED.

//
//
//

---

[12] In light of this finding, the Court denies as moot Tjuatja's request that he be allowed to submit evidence outside the administrative record to support his contention that he did not receive treatment for interstitial cystitis during the three months prior to February 1, 2007.

2. Defendants' motion for judgment is hereby GRANTED in part and DENIED in part, as follows:

    a. To the extent the motion seeks judgment on Tjuatja's claim for benefits under the STD Plan, the motion is DENIED;

    b. To the extent the motion seeks judgment on Tjuatja's claim for benefits under the LTD Plan, the motion is GRANTED; the judgment, however, is without prejudice to Tjuatja's submitting to Unum a claim for such benefits.

**IT IS SO ORDERED.**

Dated: December 9, 2010

MAXINE M. CHESNEY
United States District Judge